**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIM ROBERSON, a/k/a "Nephew,"<br><br>Defendant. | No. CR 06-3010-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING THE PARTIES' MOTIONS IN LIMINE** |

_____

**TABLE OF CONTENTS**

*I. INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *A. The Defendant's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . . . . 3
   *B. The Government's Motion For Pretrial Determination Of
      Admissibility* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
   *C. The Government's Motion In Limine* . . . . . . . . . . . . . . . . . . . . . . 11

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## *I. INTRODUCTION*

In a single-count Superseding Indictment handed down May 18, 2006, a Grand Jury charged that, from about 2002 through June 2006, defendant Tim Roberson, also known as "Nephew," knowingly and unlawfully conspired with other persons, known and

unknown to the Grand Jury, to commit one or more of the following offenses: (1) manufacturing 50 grams or more of cocaine base, which is commonly called "crack cocaine"; (2) distributing 50 grams or more of cocaine base, which is commonly called "crack cocaine"; (3) distributing 500 grams or more of cocaine salt, which is commonly called "powder cocaine"; and (4) distributing a mixture or substance containing a detectable amount of marijuana, all in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), (B), and (D). This matter is set for trial beginning on July 31, 2006.

In anticipation of trial, the parties have filed three motions concerning the admissibility of evidence at trial. The first such motion is the defendant's July 12, 2006, Motion In Limine (docket no. 29), in which the defendant seeks to exclude testimony by his wife pursuant to spousal privileges and Rule 403 of the Federal Rules of Evidence. The government resisted that motion on July 25, 2006 (docket no. 48). The second motion now before the court is the government's July 17, 2006, Motion For Preliminary Determination Of Admissibility (docket no. 30). In that motion, the government seeks a determination that evidence of a post-indictment traffic stop—at a time when the defendant was aware that there was a federal warrant for his arrest, during which the defendant gave a false name and was found to possess marijuana—is admissible to show "consciousness of guilt." The defendant resisted that motion on July 18, 2006 (docket no. 31). The last motion now before the court is the government's July 24, 2006, Motion In Limine (docket no. 41), in which the government seeks to exclude evidence of various prior convictions of some of its witnesses. The defendant filed a response to that motion the same day, July 24, 2006 (docket no. 42).

## II.  LEGAL ANALYSIS

Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104.  Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met.  *See id.*, Advisory Committee Notes, 1972 Proposed Rule.  This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102.  The court concludes that preliminary determination of the evidentiary questions presented in the parties' motions will likely serve the ends of a fair and expeditious presentation of issues to the jury.  Therefore, the court turns to consideration of those motions in turn.

### A.  *The Defendant's Motion In Limine*

The first evidentiary motion now before the court is defendant Roberson's July 12, 2006, Motion In Limine (docket no. 29), in which the defendant seeks to exclude testimony by his wife pursuant to spousal privileges and Rule 403 of the Federal Rules of Evidence.  The government requested, and was granted, an extension of time to and including July 24, 2006, to respond to this motion, but failed to file a timely response.  However, on July 25, 2006, the government filed a motion for leave to file its resistance late (docket no. 45), asserting that counsel had been unable to file a timely response, because he had been tied up in a hearing in another matter that had unexpectedly run well over its scheduled time slot.  Roberson filed a response stating that he did not object to the late filing of the government's resistance (docket no. 46).  Therefore, the court granted the

government to and including the close of business on July 25, 2006, to file its resistance. The government's resistance was filed on July 25, 2006, very shortly after the court's order granting leave for the late filing.

In support of his motion, defendant Roberson notes that the government has listed as a witness his wife, Heather Servantez. Roberson argues that Rule 501 of the Federal Rules of Evidence recognizes both a spousal or marital communications privilege and an adverse spousal testimony privilege. Roberson contends that, unless waived, the first privilege would prevent his wife from testifying about communications between the two of them outside of the presence of third parties, although it would not prevent her from testifying about his conduct rather than his communications. He contends that his wife should not be held to have waived either privilege against testifying against him by entering into a plea agreement, when her lack of counsel at the time that she was first contacted by federal agents vitiates and taints the voluntariness of any waiver of the privilege in the subsequent plea agreement. Roberson also argues that Rule 403 of the Federal Rules of Evidence should bar testimony by his wife, even if she otherwise waived the spousal privileges, because a jury could confuse the issues and determine that, if his wife was involved in the criminal conduct with which he is charged, he must also have been involved. Roberson also contends that his wife's testimony would be duplicative of the testimony of one or more of the seventeen other witnesses that the government intends to call. Thus, he contends that the prejudicial effect of his wife's testimony outweighs its probative value.

In response, the government asserts that Heather Servantez has waived any spousal testimonial privilege and that any testimony that would otherwise implicate the marital communications privilege falls within the "partners in crime" exception. The government

4

contends that, where communications involve the spouses' joint criminal activity, the interests of justice outweigh the goal of fostering marital harmony.

Rule 501 of the Federal Rules of Evidence provides as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501. The Eighth Circuit Court of Appeals has construed this rule to mean that "federal courts follow the federal common law regarding privileges in federal criminal proceedings," although state privilege rules apply in civil actions. *United States v. Espino*, 317 F.3d 788, 795 (8th Cir. 2003).

As to the scope of the spousal privilege in federal criminal cases, the Eighth Circuit Court of Appeals has explained,

> Federal courts recognize two distinct marital privileges: the *marital confidential communications privilege* and the *adverse spousal testimony privilege*. [United States v.] Bad Wound, 203 F.3d [1072,] 1075 [(8th Cir. 2000)]. . . . Under the *marital confidential communications privilege*, it is well settled that the communications to which the privilege applies have been limited to utterances or expressions intended by one spouse to convey a message to another. *United States v. Smith*, 533 F.2d 1077, 1079 (8th Cir. 1976). Though this privilege has been expanded to encompass more than mere conversations and writings, invocation of the privilege requires

5

> the presence of at least a gesture that is communicative or intended by one spouse to convey a message to the other. *Id*.
> 	* * *
> 	Under the *adverse spousal testimony privilege*, an individual "may be neither compelled to testify nor foreclosed from testifying" against the person to whom he or she is married at the time of trial. *Bad Wound*, 203 F.3d at 1075 (citing *Trammel [v. United States]*, 445 U.S. [40,] 53, 100 S. Ct. 906 [(1980)]). The privilege, therefore, rests with the testifying spouse who may waive the privilege without consent of the defendant spouse. *Id*. In *Trammel*, the Court traced the history of this spousal privilege. The Court concluded that the rule as it previously existed (allowing only the defendant spouse to give consent for the witness spouse to testify) would be modified to allow the witness-spouse alone to have the privilege to refuse to testify adversely against his or her spouse. The Court concluded that this modification promoted the public's interest in marital harmony without unduly burdening legitimate law-enforcement needs. *Trammel*, 445 U.S. at 53, 100 S. Ct. 906. Furthermore, the Court noted that a witness-spouse's agreement to testify after a grant of immunity and assurances of lenient treatment does not render his or her testimony involuntary. *Id*.

*Espino*, 317 F.3d at 795-96 (emphasis added).

Roberson appears to invoke both the "marital confidential communications privilege" and the "adverse spousal testimony privilege." However, it is clear that Roberson's wife, as the testifying spouse, has the ability to waive the spousal privileges, regardless of Roberson's, the defendant spouse's, wishes on the matter. *Id*. at 796 (citing *Trammel*, 445 U.S. at 53). It is equally clear that the fact that Roberson's wife is testifying pursuant to a plea agreement does not make her waiver of the privileges involuntary. *Id*. Also, Roberson's representation that his wife gave statements to federal agents pre-indictment and in the absence of counsel is not enough, by itself, to vitiate the

6

voluntariness of those statements or the voluntariness of the subsequent agreement to testify pursuant to the plea agreement. Roberson gives no hint that his wife was coerced, misled, or otherwise improperly manipulated into giving any statement or entering into the plea agreement. Moreover, the court agrees that the "partners in crime" exception applies to any "marital communications privilege" Roberson or his spouse might raise in this case. That exception "'permits witness-spouse testimony about confidential communications involving future or ongoing crimes in which the spouses were joint participants *at the time of the communications*.'" *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992) (recognizing such an exception) (quoting 2 WEINSTEIN'S EVIDENCE § 505[04] (1991), with emphasis in the original). Even limiting the exception to communications regarding "'patently illegal activity,'" *see id.* (recognizing such a limitation, quoting *United States v. Sims*, 755 F.2d 1239, 1243 (6th Cir. 1985), *cert. denied*, 473 U.S. 907 (1985)), the scope of the exception would permit spousal testimony about "conversations regarding joint ongoing or future patently illegal activity." *Id.* This exception would permit Servantez to testify regarding spousal communications concerning ongoing or future activities to manufacture or distribute controlled substances, as such activities are "patently illegal."

Roberson is correct that Rule 403 of the Federal Rules of Evidence gives the court the authority to exclude otherwise admissible evidence if its probative value is outweighed by the potential for prejudice, confusion, or waste of time. FED. R. EVID. 403. Nevertheless, the court believes that Rule 403 would not prevent Roberson's wife from testifying in this case. In its instructions, the court will direct the jury to treat testimony pursuant to a plea agreement or testimony of a person who claims to have participated in the offense charged against the defendant with greater caution and care than other testimony, and will also repeatedly instruct the jury that it is to decide the case on the basis

7

of evidence against the defendant, not on the basis of anybody else's conduct. The court believes that these instructions are sufficient to mitigate any potential prejudice arising from the fact that one of the witnesses against the defendant is his wife. While the court does have some sympathy for Roberson's argument that his wife's testimony would be unnecessarily cumulative of the testimony of some of the many other witnesses that the government intends to call, the court cannot make a determination of cumulativeness at this time, based merely on the numbers of witnesses, rather than the content of their testimony. The court will rely, for now, on the government's judgment about the need for all of the witnesses on its witness list, including Roberson's wife, actually to testify at trial.

Therefore, Defendant Roberson's July 12, 2006, Motion In Limine (docket no. 29) will be denied.

### B. The Government's Motion For Pretrial Determination Of Admissibility

The second evidentiary motion now before the court is the government's July 17, 2006, Motion For Preliminary Determination Of Admissibility (docket no. 30), which the defendant resisted the following day (docket no. 31). This motion concerns evidence of a post-indictment traffic stop, at a time when Roberson was purportedly aware that there was a federal warrant for his arrest, during which he purportedly gave a false name and was found to possess marijuana.

The government argues that the evidence of the traffic stop is admissible to show Roberson's "consciousness of guilt," but provides no further explanation of its theory of how this is so. Roberson contends that this evidence is not relevant, and if somehow relevant, is more prejudicial than probative. Roberson contends that the government cannot show how this evidence meets the proper purposes of admissibility under Rule

8

404(b) of the Federal Rules of Evidence, which pertains to *prior* "bad acts," so that evidence of these *subsequent* "bad acts" is, likewise, inadmissible. Because the traffic stop occurred more than a year after the end of the time period for the conspiracy alleged in this case, Roberson contends that the stop has little or no probative value on the question of whether or not he participated in the earlier drug conspiracy, and the supposed "consciousness of guilt" that the government asserts the evidence shows is mere speculation about his state of mind.

As a general proposition, "[e]vidence of false identification is relevant and admissible to show consciousness of guilt." *United States v. Horton*, 873 F.2d 180, 181 (8th Cir. 1999); *see also United States v. Holman*, 197 F.3d 920, 921 (8th Cir. 1999) (citing *Horton* for this proposition in a case in which the defendant, unable to escape at the arrest site, provided false identification). Nevertheless, the court finds it instructive to consider, by analogy, the chain of inferences that must lead from certain conduct to an inference of consciousness of guilt, as explained by the Eighth Circuit Court of Appeals in a "flight" case. In *United States v. Red Bird*, 450 F.3d 789 (8th Cir. 2006), the Eighth Circuit Court of Appeals explained "that the probative value and admissibility of flight evidence depends on the degree of confidence with which the fact-finder can draw four inferences: from the defendant's behavior to flight; from flight to consciousness of guilt; from consciousness of guilt to consciousness of guilt concerning the crime charged; and from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Red Bird*, 450 F.3d at 793 (citing *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991), and *United States v. Chipps*, 410 F.3d 438, 449-50 (8th Cir. 2005)). Recast for the present circumstances, the necessary chain of inferences would be the following: from the defendant's behavior to false identification; from false identification to consciousness of guilt; from consciousness of guilt to consciousness of guilt concerning

9

the crime charged; and from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

If the government is correct that Roberson falsely identified himself in the course of the traffic stop, the first and second inferences appear to be satisfied. *See Horton*, 873 F.3d at 181 (false identification does show consciousness of guilt). The questionable links in the chain here are the third and fourth. It seems far more reasonable, in the first instance, to infer that any consciousness of guilt arising from Roberson's false identification of himself was consciousness of guilt *as to the marijuana possession*, not as to the conspiracy offense charged in this case. Moreover, it is a very long step, indeed, from consciousness of guilt concerning possession of marijuana to consciousness of guilt concerning a *prior* conspiracy to manufacture or distribute crack cocaine and to distribute powder cocaine and marijuana. On the other hand, these links in the chain of inferences become much stronger *where the defendant was purportedly aware that there was a federal warrant for his arrest on the offense charged in this case*. Under those circumstances, the defendant's false identification of himself actually suggests *an attempt to avoid the arrest warrant for the offense charged in this case*, not merely to avoid the marijuana possession charge, and completes the necessary chain of inferences.[1]

Even so, because the chain of inferences is dependent upon *the defendant's knowledge that there was a federal warrant for his arrest at the time he gave a false identification of himself*, in order for the evidence of the traffic stop to be admissible, the

---

[1]Were the only evidence that the government seeks to admit evidence that, subsequent to the period of the conspiracy, the defendant was found in possession of a small quantity of marijuana, the admissibility of that evidence might present a very different question. Here, the possession of the marijuana is merely incidental to the circumstances of the false identification, and does not make the admission of all of the circumstances of the traffic stop unduly prejudicial.

10

government must first establish that, prior to the traffic stop, the defendant knew that there was a federal warrant for his arrest on the drug conspiracy offense charged in this case. With that caveat, the government's July 17, 2006, Motion For Preliminary Determination Of Admissibility (docket no. 30) will be granted.

### C. *The Government's Motion In Limine*

The final evidentiary motion now before the court is the government's July 24, 2006, Motion In Limine (docket no. 41), to which the defendant responded the same day (docket no. 42).[2] In this motion, the government seeks to exclude evidence of various prior convictions of some of its witnesses. In his response, defendant Roberson resists the exclusion of only one prior conviction of only one of the witnesses, witness Ashley Srpinger's November 8, 2004, conviction for "driving while barred."

Thus focused, the pertinent arguments of the parties on this motion are the following. The government contends that, like the other convictions of other witnesses that it seeks to exclude, evidence of Ms. Springer's conviction for "driving while barred" is not admissible pursuant to Rule 609(a) of the Federal Rules of Evidence, because the offense did not involve dishonesty, it is a misdemeanor not punishable by more than a year of imprisonment, and the prejudicial effect of the evidence would outweigh its probative value. Defendant Roberson argues that this conviction is an aggravated misdemeanor, and thus punishable by up to two years in the state penitentiary. Roberson also argues that it

---

[2]Although the government's motion in limine was filed after the deadline for such motions, the government contends that the circumstances giving rise to the motion in limine only became apparent from defendant Roberson's trial brief, filed July 21, 2001 (docket no. 36). Roberson does not resist the motion on the ground of untimeliness, and the court finds good cause for the belated motion in limine.

11

was a conviction for a crime of dishonesty, because Ms. Springer continued to hold herself out to the public as a validly licensed driver, when she had no valid license.

In pertinent part, Rule 609 of the Federal Rules of Evidence provides as follows:

> **(a) General rule.** For the purpose of attacking the credibility of a witness,
> **(1)** evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . .; and
> **(2)** evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

FED. R. EVID. 609(a). In *State v. Carmer*, 465 N.W.2d 303 (Iowa Ct. App.1990), the Iowa Court of Appeals held that knowledge of barred license status is not an element of the offense of driving while barred. *Carmer*, 465 N.W.2d at 304. Thus, the court finds Roberson's contention that this offense is one involving "dishonesty" to be unpersuasive, and the conviction for driving while barred is not admissible pursuant to Rule 609(a)(2). On the other hand, Roberson is correct that driving while barred is an aggravated misdemeanor. *See* IOWA CODE § 321.561. Roberson is also correct that, unless a specific penalty is otherwise provided, an aggravated misdemeanor under Iowa law is punishable by imprisonment for up to two years. *See* IOWA CODE § 903.1(2). Thus, Rule 609(a)(1) would potentially permit Roberson to use a conviction for driving while barred for purposes of impeachment.

Even so, Rule 609(a)(1) makes admissibility of convictions punishable by imprisonment in excess of one year "subject to Rule 403." FED. R. EVID. 609(a)(1). Here, the court must agree with the government that, pursuant to Rule 403, the potential for prejudice from admission of a conviction for driving while barred outweighs its

probative value in this case. Indeed, Roberson makes no argument that the conviction is probative of *anything*, apart from his mistaken argument that it is probative of dishonesty. On the opposite side of the scales, the court agrees with the government that evidence of such a conviction would be unfairly prejudicial, because it would serve no purpose other than to suggest that the witness is a bad person. Thus, Rule 403, as incorporated into Rule 609(a)(1), bars admission of the witness's prior conviction for driving while barred.

Therefore, the government's July 24, 2006, Motion In Limine (docket no. 41) will be granted as to both the contested and uncontested evidence at issue in that motion.

### III. CONCLUSION

Upon the foregoing,

1. Defendant Roberson's July 12, 2006, Motion In Limine (docket no. 29) is **denied**.

2. The government's July 17, 2006, Motion For Preliminary Determination Of Admissibility (docket no. 30) is **granted**, with the caveat that evidence of the traffic stop in question will only be admissible, if the government first establishes that, prior to the traffic stop, the defendant knew that there was a federal warrant for his arrest on the drug conspiracy offense charged in this case.

3. The government's July 24, 2006, Motion In Limine (docket no. 41) is **granted** in its entirety.

**IT IS SO ORDERED.**

**DATED** this 25th day of July, 2006.

_Mark W. Bennett_
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA